| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:<br>DATE FILED: 2/11/2021 |
| In re MICHAEL RODGER BROWN,<br><br>JENNIFER BROWN,<br>        Appellant<br>  v.<br>MICHAEL RODGER BROWN,<br>        Appellee. | 1:20-cv-03943 (MKV)<br><br>OPINION AND ORDER |

MARY KAY VYSKOCIL, United States District Judge:

  Appellant Jennifer Brown ("Appellant" or "Jennifer") appeals from an April 27, 2020, decision of the Bankruptcy Court (Garrity, J.) which, *inter alia*, granted in part the Debtor-Appellee Michael Brown's ("Appellee" or "Michael") motion to approve title to and distribution of the Parties' marital property and to expunge Jennifer's Equitable Distribution Claim (the "April 26 Order"). For the reasons that follow, the April 27 Order is AFFIRMED. Because the facts and legal arguments regarding this appeal are adequately presented in the briefs and in the record, Appellant's request for oral argument on the appeal is denied. *See* Fed. R. Bankr. Pro. 8019(b)(3).

## FACTUAL BACKGROUND

  The facts underlying the dispute before the Court are discussed in detail in Judge Garrity's comprehensive Memorandum Decision. *See* Dkt. No. 112, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. March 13, 2020), reported at 615 B.R. 725. The Court recounts them here only to the extent necessary for this decision.

  Jennifer and Michael Brown were married in 2001. Op. at 3. In March 2013, Jennifer commenced an action in state court to dissolve the marriage (the "Divorce Action"). Op. at 3.

1

Shortly thereafter, the state court appointed an accounting firm, Bollam Sheedy Torani & Co., LLP CPA ("BST") to serve as an independent expert in the case. Op. at 3-4. Relevant here, BST was entrusted to "trace the source, use and application of marital funds acquired and spent since 2006." Op. at 4. Jennifer also retained an accounting firm, Financial Research Associates ("FRA"), to act as her own expert and to review the report produced by BST. Op. at 4. Both firms determined that there were approximately $12.75 million in marital assets for which the experts could not account. Op. at 4. The Bankruptcy Court labeled them the "Unaccounted For Marital Assets."

While the Divorce Action was pending, on March 5, 2018, Michael filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Op. at 4. Jennifer filed a contingent claim in the bankruptcy case. *See* Op. at 7-8; Claim No. 6, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. April 4, 2018). Jennifer's claim asserted a right to an "equitable distribution" of the Unaccounted For Marital Assets (the "Equitable Distribution Claim"). Op. at 8.

After she filed the Equitable Distribution Claim, Jennifer moved to dismiss the bankruptcy action or, alternatively, for relief from the automatic bankruptcy stay to allow the Divorce Action to proceed. Op. at 4-5. Michael and the Trustee opposed the motion to dismiss, but urged the Bankruptcy Court to grant the stay relief. Op. at 6. Michael, however, went further and asked the Bankruptcy Court to retain exclusion jurisdiction over questions related to the equitable distribution of marital assets (both then-known and then-unaccounted-for). Op. at 6. The Bankruptcy Court granted the motion insofar as it granted relief from the automatic stay, Op. at 6, but denied Michael's motion to reserve the issue of equitable distribution of assets to the Bankruptcy Court action. Op. at 6-7. In relevant part, the Bankruptcy Court's Order stated:

2

> ORDERED that the Motion is granted to the extent that Jennifer is granted relief from the Automatic Stay and leave to continue the Matrimonial Action in all respects, *including* without limitation the determination of temporary and permanent support, maintenance, and alimony; the enforcement of state court orders for support; and *the rendering of judgment determining the nature and extent of marital property, the nature and extent of Jennifer's interest in such property, and the equitable distribution of such property*, **provided** that while Jennifer is free to seek to collect or obtain any property that is not part of the Debtor's bankruptcy estate, including without limitation post-petition income and assets, any distribution of property of the bankruptcy estate and any determination of title to assets of the bankruptcy estate, whether for collection of support, equitable distribution or otherwise, shall be subject to this Court's review and approval; and it is further
>
> ORDERED that in the event that Jennifer and the Debtor enter into a settlement agreement, any provisions of such an agreement that purports to determine the distribution of or title to property of the bankruptcy estate shall not be effective with regard to such property without this Court's review and approval.

Op. at 7; Order, Dkt. No. 17, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. April 4, 2018) (emphasis added).

The Divorce Action proceeded to trial in front of a Special Referee. Op. at 8. On July 20, 2019, after several days of trial, Michael and Jennifer reached a settlement of the Divorce Action, memorialized in a "So-Ordered Term Sheet (the "Term Sheet"). *See* Op. at 8-9; So-Ordered Term Sheet, Dkt. No. 85-1 at 41-60 ("Term Sheet"), *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. Nov. 26, 2019). In relevant part, the Term Sheet states: "The Defendant [Michael] shall pay to the Plaintiff [Jennifer] $2,500,000 as her share of equitable distribution." Term Sheet ¶ 2. The Term Sheet provided that the payment would come from Michael's post-petition earnings, rather than the marital or bankruptcy estate.[1] Op. at 9. The Term Sheet also provided that "The Plaintiff [Jennifer] or her agents shall not interfere

---

[1] Among other provisions, the Term Sheet also provided that Jennifer would provide to Michael, his attorneys, and the Chapter 7 Trustee an inventory of all marital property she possessed, and then would deliver all marital property to the Trustee. Term Sheet ¶¶ 4-5. These provisions are not at issue in this appeal.

3

and/or block the Defendant's [Michael's] bankruptcy action, entitled In re Michael Rodger Brown in the United States Bankruptcy Court, Southern District of New York, Case No. 18-10617." Term Sheet ¶ 21.  Finally, the Parties agreed that the Term Sheet would bind them even in the absence of a more fulsome settlement agreement:

> This Term Sheet is intended to be a fully binding agreement between the parties. Although the parties intend to enter into a more detailed agreement, in the even they are unable to do so, the Term Sheet shall remain in full force and effect and shall constitute an agreement pursuant to DRL § 263(B)(3).[2]

*Id.* ¶ 22.

On July 30, 2019, the Special Referee overseeing the Divorce Action interrogated both Jennifer and Michael regarding the Term Sheet.  Op. at 11.  Most relevant to this action, Jennifer confirmed that she had read the Term Sheet, discussed it with her lawyers, signed it, and believed it to be a "fair and reasonable settlement of the economic issues in [the] matrimonial action."  *See* Op. at 11-12; Tr. of July 30, 2019 H'rg ("H'rg Tr.") at 4-7, Dkt. No. 85-1 at 62-82, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. Nov. 26, 2019). After allocuting Michael on the same topics and receiving similar answers, the Special Referee accepted the Term Sheet as the basis for the Parties' Judgment of Divorce.  Op. at 12; H'rg Tr. at 14:8-14.  The Parties' Term Sheet was also so-ordered that day by the Special Referee overseeing the trial.  *See* H'rg Tr. at 2:23-25.

The Judgment of Divorce was entered on November 8, 2019.  *See* Op. at 15; Final Judgment of Divorce, Dkt. No. 85-1 at 23-33, *In re Michael Rodger Brown*, Case No. 18-bk-

---

[2] There is no Section 263 of the New York Domestic Relations Law.  As best the Court can tell, the Parties intended the Term Sheet to be an "agreement of the parties" pursuant to Section 236(B)(3) of the Domestic Relations Law. This section provides for the validity of agreements signed by a husband and wife before or during the marriage and relating to division of marital property, provisions for custody and care of children, and other issues that may arise if a marriage is terminated.  Because the Court does not rely on this provision of the Term Sheet for anything more than the finding that the Term Sheet is binding on the Parties, the error in citing to a non-existent (or erroneous) section of the Domestic Relations Law does not affect the analysis here.

4

10617-JLG (Bankr. S.D.N.Y. Nov. 26, 2019).  The state court incorporated the Term Sheet into the Final Judgment of Divorce, including by specifically referencing the payment of $2,500,000 as "[Jennifer's] share of equitable distribution."  Op. at 15; Final Judgment of Divorce at 6.  The Judgment of Divorce provided that the Term Sheet (along with another stipulation relating to custody and the July 30 hearing transcript) "shall survive and shall not be merged in this Judgment."  Op. at 15; Final Judgment of Divorce at 9.[3]

Following entry of final judgment in the Divorce Action, Michael moved in the Bankruptcy Court for an Order approving the Term Sheet as a settlement of Jennifer's Equitable Distribution Claim and filed an objection seeking to expunge Jennifer's Equitable Distribution Claim.  *See* Op. at 15; Motion to Approve Title To and Distribution of Marital Property pursuant to Term Sheet in Matrimonial Action, and Expunge Claim No. 6 of Jennifer Brown pursuant to 11 U.S.C. § 502(A) and Fed. R. Bankr. P. 3007, Dkt. No. 85, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. Nov. 26, 2019); Notice of Objection, Dkt No. 86, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. Nov. 26, 2019).  The Chapter 7 Trustee filed a statement in support of the Motion.  *See* Joinder to, and Memorandum in Support of, Debtor's Motion, Dkt. No. 92, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. Jan. 3, 2020).  Jennifer opposed the Motion.  *See* Op. at 16; Opposition to Debtor's Motion, Dkt. No. 88, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. December 27, 2019).

---

[3] As set out in Judge Garrity's opinion, before final judgment was entered, Jennifer objected to the form of judgment initially offered by Michael largely based on the same arguments she makes here: *i.e.* that the Term Sheet did not foreclose her seeking additional money in the bankruptcy as a result of her claim.  However, as Judge Garrity explains, the state court apparently overruled Jennifer's objections to the judgment, as it entered Michael's proposed judgment without alteration and did not distinguish between the "equitable distribution" payment in the Term Sheet and the Equitable Distribution Claim Jennifer had filed in the bankruptcy case.  *See* Op. at 15.

After argument, the Bankruptcy Court declined to enter any relief approving the Term Sheet under Federal Rule of Bankruptcy Procedure 9019. April 27 Order at 1; Op. at 16-17. Judge Garrity held that the Term Sheet was not subject to Court approval because, in granting Jennifer's motion for relief from the automatic stay to permit the Divorce Action to proceed, the Bankruptcy Court only retained jurisdiction over equitable distribution payments to the extent such payments were to be made from the bankruptcy estate. *See* Op. at 16-17. Because the Term Sheet did not provide for any payment from the estate, but instead clearly stipulated that Michael would make payments from post-petition income, the Court denied as moot Michael's request for approval of the Term Sheet as a settlement subject to Bankruptcy Court approval. Op. at 17.

The Bankruptcy Court did, however, expunge Jennifer's Equitable Distribution Claim, *see* April 27 Order at 2, explaining in a well-reasoned opinion that Jennifer's Equitable Distribution Claim was barred by principles of *res judicata*. Op. at 25. Specifically, the Bankruptcy Court found that the Equitable Distribution Claim is the same one "that [Jennifer] settled in the Matrimonial Action." Op. at 24-25. As a result, the claim was not enforceable against the bankruptcy estate or Michael and the claim was expunged. Op. at 25, 38. The Bankruptcy Court's expungement of the Equitable Distribution Claim was memorialized in the April 27 Order. Jennifer timely filed a notice of appeal of that Order. *See* Notice of Appeal, ECF No. 1.

Following briefing of this appeal, Appellant requested oral argument pursuant to Federal Rule of Bankruptcy Procedure 8019. *See* Letter to Court, ECF No. 12. However, because "the facts and legal arguments are adequately presented in the briefs and record, and the decisional

process would not be significantly aided by oral argument," the Court did not permit oral argument for this appeal.  *See* Fed. R. Bankr. Pro. 8019(b)(3).

## **STANDARD OF REVIEW**

On an appeal from the Bankruptcy Court, a District Court reviews *de novo* conclusions of law, *see Elliot v. Gen. Motors LLC (In re Motors Liquidation Co.)*, 829 F.3d 135, 152 (2d Cir. 2016) (citing *In re Petrie Retail, Inc.*, 304 F.3d 223, 228 (2d Cir. 2002)), while reviewing findings of fact for clear error.  *In re Republic Airways Holdings Inc.*, 582 B.R. 278, 281 (S.D.N.Y. 2018) (citing *In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000)). A finding of fact is clearly erroneous only if this Court is "left with the definite and firm conviction that a mistake has been committed." *Adler v. Lehman Bros. Holdings Inc. (In re Lehman Bros. 3 Holdings Inc.)*, 855 F.3d 459, 469 (2d Cir. 2017).  The Bankruptcy Court's "'[a]pplication of the principles of res judicata presents a question of law to be reviewed de novo.'" *In re Futter Lumber Corp.*, 473 B.R. 20, 28 (E.D.N.Y. 2012) (quoting *In re Scott Cable Commc'ns.*, 259 B.R. 536, 542 (D. Conn. 2001)) (alteration in original).

When considering an objection to a claim pursuant to Section 502(b) of the Bankruptcy Code, 11 U.S.C. § 502(b), the Parties have alternating burdens of proof.  First, "[t]o overcome the prima facie evidence [of a claim], an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000).  If the objecting party succeeds, then the burden shifts back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)*, No. 12-cv-06074 (RJS), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted).  "In determining whether a party has met their

7

burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure." *In re DJK Residential LLC*, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009). In light of that, the Court analyses the Equitable Distribution Claim, and Michael's objection, under the standards for a motion to dismiss a complaint. *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

## DISCUSSION

This is a straightforward case, and the Bankruptcy Court was correct to expunge Jennifer's Equitable Distribution Claim. After she sought and obtained stay relief (over Michael's partial objection), the Divorce Action proceeded and finally resolved Jennifer's right to equitable distribution, as it must under New York Domestic Relations Law Section 170(7). Clear principles of *res judicata* bar the relitigation of Jennifer's claim to equitable distribution after the issue was entirely settled in the Divorce Action. Because any claim to an equitable distribution was barred after the Final Judgment of Divorce was issued, the Equitable Distribution Claim in the bankruptcy was "unenforceable against the debtor . . . under any agreement or applicable law . . . ." 11 U.S.C. § 502(b)(1).

On appeal, Jennifer argues first that the Term Sheet does not waive a claim to "an equitable share of any concealed assets that may be discovered by the Bankruptcy Trustee." *See* Appellant's Brief, ECF No. 8, at 15-18. Second, Jennifer argues that the Term Sheet contains no language specifically releasing her claims and does not "purport to be the entire agreement between the Parties." *Id.* at 18-20. Finally, Jennifer argues that the Bankruptcy Court's

application of *res judicata* was inappropriate and should not bar her claim here. All of these points are unavailing.

This case begins and ends with the *res judicata* analysis. Following final judgment on the merits in an action, *res judicata* "'precludes [a] part[y] . . . from relitigating issues that were or could have been raised in that action.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 399 (2d Cir. 2000)). In considering whether the Parties' Final Judgment of Divorce has *res judicata* effect, the Court looks to New York *res judicata* principles. *See In re Sokol*, 113 F.3d 303, 306 (2d Cir. 1997) ("[T]he preclusive effect of a state court determination in a subsequent federal action is determined by the rules of the state where the prior action occurred[.]") (citing 28 U.S.C. § 1738); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.").

Under New York law, *res judicata* takes effect where (1) the previous action involved an adjudication on the merits, (2) the previous action involved the parties in the subsequent action, or those in privity with them, and (3) the claims asserted in the subsequent action were, *or could have been*, raised in the prior action. *See Pike v. Freeman*, 266, F.3d 78, 91 (2d Cir. 2001); *see also Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008) ("Under New York law, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (internal citation omitted)). As it relates to judgments of divorce, the New York Court of Appeals clearly has stated that "a final judgment of divorce . . . has the effect of determining the rights of the parties with respect

9

to every material issue that was actually litigated or might have been litigated[.]" *Rainbow v. Swisher*, 72 N.Y.2d 106, 110, 531 N.Y.S.2d 775, 777 (1988).

As an initial matter, the Final Judgment of Divorce, which incorporates the Term Sheet but does not merge the Term Sheet into the judgment, is an order capable of possessing *res judicata* effect. A final judgment incorporating a settlement agreement is properly considered a consent judgment. *See, e.g.*, *Arizona v. California*, 530 U.S. 392, 414 (2000). It has long been true that when a final judgment incorporates the parties' settlement agreement, the resulting order has preclusive effect for the matters dealt with in the agreement, "since consent decrees are accorded *res judicata* effect." *Williams v. Codd*, 459 F. Supp. 804, 811 (S.D.N.Y. 1978) (citing *United States v. Southern Ute Indians*, 402 U.S. 159 (1971)). Specifically, the final judgment incorporating the agreement will be *res judicata* or claim preclusive of any attempt to relitigate issues settled by the Parties. *Arizona*, 530 U.S. at 414.

The Final Judgment of Divorce in this case is entitled to *res judicata* effect. The Divorce Action resulted in a final judgment on the merits and the Parties involved were the same as those involved here. Judgments of divorce in New York are "a final settling of accounts between marital partners with an equitable interest in all marital property." *Pangea Capital Mgmt. LLC v. Lakian*, 34 N.Y. 3d 38, 46, 132 N.E.3d 618, 624 (2019). In other words, a final judgment of divorce is a final decision on the merits of a divorce action, capable of being *res judicata*. *E.g. Levin v. Barone*, No. 14-cv-00673 (AJN), 2018 WL 1626526, at *4 (S.D.N.Y. Mar. 29, 2018) ("[T]he doctrine of *res judicata* bars this action: [t]he judgment of divorce is a prior judgment on the merits involving the same parties . . . ." (citing *In re Schwartz*, 409 B.R. 240, 249 (B.A.P. 1st Cir. 2008))).

It is also clear that the Divorce Action could and did necessarily resolve Jennifer's claims related to an equitable distribution of marital property, since such divorce actions normally resolve "ancillary issues like title to marital property" in addition to termination of the marriage. *See Boronow v. Boronow*, 71 N.Y.2d 284, 290, 525 N.Y.S.2d 179, 183 (1983) ("In a matrimonial action, where the essential objective is to dissolve the marriage relationship, questions pertaining to important ancillary issues like title to marital property are certainly intertwined and constitute issues which generally can be fairly and efficiency resolved with the core issue. The courts and the parties should ordinarily be able to plan for the resolution of all issues relating to the marriage relationship in the single action."). Through the Equitable Distribution Claim, Jennifer now seeks a share of "pre-petition marital assets the Bankruptcy Trustee is able to recover." Appellant's Brief at 18. This clearly is a claim related to the "title to marital property" that would otherwise prevent "a final settling of accounts between marital partners with an equitable interest in all marital property." *Boronow*, 71 N.Y.2d 284, 290; *Pangea Capital Mgmt.*, 34 N.Y. 3d 38, 46.

Moreover, New York Domestic Relations Law section 170(7) specifically provides that a divorce action *cannot* proceed to final judgment unless "the economic issues of *equitable distribution of marital property* . . . have been resolved by the parties, or determined by the court and incorporated into the judgment of divorce." N.Y. Dom. Relations L. § 170(7) (emphasis added). "Equitable distribution" is a term of art in matrimonial law, referring to the division of assets upon divorce. *See, e.g.*, N.Y. Dom. Relations L. § 236(c)-(d) (discussing the considerations for calculating the equitable distribution); *see also* Brett R. Turner, EQUITABLE DISTRIB. OF PROP. § 1:1 (explaining "equitable distribution" in the matrimonial context). Both the Term Sheet and the Final Judgment of Divorce refer to payment to Jennifer as "her share of

equitable distribution." *See* Final Judgment of Divorce at 6-7; Term Sheet ¶ 2.  Where the Court and the Parties used that term of art in connection with a matrimonial proceeding to define the payment to Jennifer, the Court must construe it consistent with that definition to mean that the Parties settled the equitable distribution issues entirely.  This is especially true when New York law requires that equitable distribution issues be finally resolved before a final judgment will issue in a divorce case.  *See* N.Y. Dom. Relations L. § 170(7).  As a result, it is clear that the Final Judgment of Divorce, incorporating the Parties' agreement, finally resolved all issues related to equitable distribution.  Any other equitable distribution claims Jennifer wished to make, including those contained in the Equitable Distribution Claim to the extent they are distinct, at least could have been litigated in the Divorce Action.  As a result, the Final Judgment of Divorce is entitled to *res judicata* effect.

While not necessary to find that the Final Judgment of Divorce is preclusive of the Equitable Distribution Claim, Jennifer's actions in connection with the Divorce Action further indicate that she was aware that the action would resolve all outstanding questions about the equitable distribution of property, including with regard to any Unaccounted For Marital Assets. Any complaint she now makes about her failure to preserve those rights in the Term Sheet or Final Judgment of Divorce falls squarely on her shoulders.

First, Jennifer is at least partially responsible for the preclusive effect of the Final Judgment of Divorce.  Specifically, Jennifer sought, and over Michael's objection obtained, relief from the automatic bankruptcy stay specifically so that she could litigate equitable distribution of property in the Divorce Action.  In granting Jennifer's motion for relief from the automatic stay, the Bankruptcy Court specifically declined to retain jurisdiction over any issues related to equitable distribution, except to the extent that payments would affect the bankruptcy

estate. *See* Order Denying Motion to Dismiss at 2-3, Dkt. No. 17, *In re Michael Rodger Brown*, Case No. 18-bk-10617-JLG (Bankr. S.D.N.Y. April 4, 2018). In other words, Jennifer was aware that, when presented with the question of which action (the bankruptcy or the Divorce Action) would determine equitable distribution, the Bankruptcy Court determined that the Divorce Action would finally decide those questions except in the limited circumstance where any order or agreement purported to involve the bankruptcy estate. Significantly, the Term Sheet makes clear that the payments fully and finally settling Jennifer's equitable distribution claims are to be made not from the bankruptcy estate, but from Michael's post-petition earnings, thereby falling clearly outside the of the scope of the bankruptcy case.

Jennifer was also aware that the Divorce Action could and would adjudicate any Unaccounted For Marital Assets. In connection with the Divorce Action, Jennifer retained her own expert accounting firm to trace the Unaccounted For Marital Assets that she now claims were not subject to resolution in that same action and to review the work of the Court-appointed accounting firm hired to do the same. At a minimum, Jennifer's actions indicate that she knew her right to equitable distribution of any Unaccounted For Marital Assets could be resolved in the Divorce Action. Thus, when a final judgment was entered in that action, her failure to litigate the issue fairly may preclude a later claim for the same relief. Jennifer's failure to reserve any claims for as-of-yet unaccounted for assets in the Parties' Term Sheet means that any claim she might have had was extinguished in the Final Judgment of Divorce. *Cf. Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 193 (2d Cir. 2008) ("Under New York law, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." (internal citation omitted))

Jennifer's secondary argument that she was fraudulently induced into signing the Term Sheet also fails. *See* Appellant's Brief at 17; Appellant's Reply Brief, ECF No. 10, at 1-2. It is true that a Court may decline to apply *res judicata* if the "prior judgment was procured by fraud." *Michelo v. Nat. Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 690 n.9 (S.D.N.Y. 2019) ("New York law . . . provides that a plaintiff may attempt a collateral attack on a judgment based . . . on . . . a demonstration that the prior judgment was procured by fraud." (internal citation omitted)). But, Jennifer has not plausibly alleged such fraud. Jennifer argues only that Michael "fraudulently concealed" marital assets and that the Final Judgment cannot be preclusive of any claim she might have to those assets. Appellant's Brief at 17; Appellant's Reply Brief at 1-2.

This argument is legally insufficient to find that the Final Judgment of Divorce was procured by fraud. While neither this Court nor the Bankruptcy Court has passed on whether Michael has concealed any assets, the possibility that he may have done so was known to Jennifer since the beginning of the Divorce Action. *See* Op. at 3-4, 32-33. The record plausibly leads to only one conclusion—the issue of unaccounted for assets was litigated and resolved in the Divorce Action, since the court appointed an expert and Jennifer herself retained her own expert to quantify the issues. As the Bankruptcy Court held and as noted above, it is clear that Jennifer was on notice of the potential existence of concealed marital property, which she now claims was fraudulently concealed. *See* Op. at 32-33. While Jennifer did not necessarily know the amount or extent of unaccounted for assets, she did know that such assets could exist, and still chose to settle the equitable distribution issue. She cannot now claim that any concealed funds fraudulently induced her to enter into the Term Sheet or to consent to the Final Judgment of Divorce. *Cf. TIG Ins. Co. v. Glob. Int'l Reinsurance Co.*, 640 F. Supp. 2d 519, 524 (S.D.N.Y.

2009) ("[A] claim for fraudulent inducement will not lie where the allegedly defrauded party is on notice from prior disclosures of the likely existence of the allegedly concealed information on which the claim of fraudulent inducement is based.").

Despite knowing of the potential existence of unaccounted for property, Jennifer later reaffirmed that she had sufficient information about Michael's finances to enter into the Term Sheet and to settle her equitable distribution claim. During the July 30, 2019, hearing, when asked by the Special Referee whether she "ha[d] sufficient information about [Michael's] finances to be able to enter into [the Term Sheet]," Jennifer conceded that she did. *See* H'rg Tr. at 8:10-15. Throughout the whole process, Jennifer was represented by counsel and the provisions of the Term Sheet extensively were negotiated. The Court therefore agrees with the Bankruptcy Court that Jennifer cannot escape the preclusive effects of the Term Sheet and Final Judgment of Divorce. Op. at 32-38; *cf. Bradley v. Bradley*, 167 A.D.3d 489, 489, 89 N.Y.S.3d 171, 172 (1st Dept. 2018) (affirming denial of motion to set aside settlement where wife was "represented by able and experienced counsel, had been involved in negotiations for a period of time, came close to an agreement two weeks prior to reaching settlement, and spent the entire day negotiating the final terms of the settlement.").

Through her Equitable Distribution Claim, Jennifer attempted to secure some portion of yet-to-be-discovered marital assets. However, that claim was settled as part of the Term Sheet and the Final Judgment of Divorce. As a result, *res judicata* bars the Equitable Distribution Claim. Because this total defense existed to the claim, the Bankruptcy Court was correct to expunge the Equitable Distribution Claim pursuant to Section 502(b) after Michael filed an objection. *See Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450 (2007) (Section 502(b)(1) "is most naturally understood to provide that, with limited exceptions, any

defense to a claim that is available outside of the bankruptcy context is available in bankruptcy."); *see also In re LightSquared Inc.*, 504 B.R. 321, 336 (Bankr. S.D.N.Y. 2013) (the "language could not be plainer – if a claimant would be estopped under non-bankruptcy law from having a valid claim against the debtor, a party may seek disallowance of the claim under section 502(b)(1).").

The Court has reviewed Appellant's remaining arguments and finds them to be without merit.

## CONCLUSION

For the reasons stated here, the April 27 Order of the Bankruptcy Court is AFFIRMED. This case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

Date:  **February 11, 2021**               **MARY KAY VYSKOCIL**
   **New York, NY**                  **United States District Judge**